UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

CALVIN ELLIS MANCE,

    Plaintiff,

    v.                                                      Case No. 3:25-CV-605-CCB-SJF

AUTOZONERS LLC, et al.,

    Defendants.

## <u>OPINION AND ORDER</u>

Before the Court is Defendants AutoZoners LLC ("AutoZone") and Tracy E.

Kern's Motion to Dismiss. (ECF 14). Plaintiff Calvin Ellis Mance opposes this motion.

(ECF 20). Mr. Mance has also moved for a stay, (ECF 20), and default judgment against

Defendants, (ECF 19). The Court grants Defendants' motion to dismiss and denies Mr.

Mance's motions for stay and default judgment for the reasons below.

### I.    RELEVANT BACKGROUND

On July 7, 2025, Mr. Mance filed a complaint against Defendants in which he

alleges that (1) Defendants defamed him, (2) they subjected him to a hostile work

environment in violation of Title VII, (3) they retaliated against him when he

complained about workplace hostility in violation of Title VII, and (4) they intentionally

inflicted emotional distress upon him. (ECF 1). Mr. Mance also moved for leave to

proceed *in forma pauperis*, (ECF 2), which the Court granted on February 17, 2026, (ECF

6). Defendants waived service, (ECF 10), and moved to dismiss the complaint, (ECF 14).

At the motion to dismiss stage, well-pleaded facts are taken as true. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). But it is not easy to discern precisely what Mr. Mance is alleging in his complaint. Setting aside Mr. Mance's conclusory statements, the Court construes his factual allegations as follows:

On November 1, 2024, Mr. Mance was employed by AutoZone. (ECF 1 at 1). On that date, Andy Rottinghaus, the District Manager, sent an email to two other AutoZone managers containing allegedly false and defamatory information about Mr. Mance, though Mr. Mance does not specify the content of the email. (*Id.*) Mr. Mance alleges that this email was sent in retaliation after Mr. Mance filed an Equal Employment Opportunity Commission ("EEOC") complaint alleging Title VII violations. (*Id.* at 1–2). Mr. Mance was terminated on November 15, 2024. (*Id.* at 1). At some point, the allegedly false and defamatory information was repeated by Ms. Kern, AutoZone's counsel, in an EEOC filing. (*Id.*)

In his complaint, Mr. Mance never articulates the alleged false and defamatory statements. But he does imply that Mr. Rottinghaus informed the other managers Mr. Mance was intoxicated. For instance, he states that "Auto Zoners LLC [k]nows for a fact that there is no way that they can prove that Mr. Mance was intoxicated presumably on or after the date of 10/28/24 through 11/01/24," and that "Auto Zoners LLC cannot without any chemical, or otherwise any test, prove such instances to be true." (*Id.* at 1–2). He later states that AutoZone "[f]urther defam[ed] his character by saying he violated their company policy as an employee and that he was intoxicated knowing it's

not true." (*Id.* at 2). Bearing in mind its duty to draw inferences in Mr. Mance's favor, *Blagojevich*, 526 F.3d at 1081, the Court takes Mr. Mance to be alleging that Mr. Rottinghaus stated in an email that Mr. Mance was intoxicated.

Defendants attach two documents to their motion to dismiss that help clarify Mr. Mance's allegations. The first of these is a November 1, 2024, email from Mr. Rottinghaus to AutoZone managers Quentin Kleber and David Greer. Because Mr. Mance refers directly to this email in his complaint, the Court may consider its contents. *See Yash Venture Holdings, LLC v. Moca Fin., Inc.*, 116 F.4th 651, 659 n.11 (7th Cir. 2024) (noting that a court may consider "documents that are central to the complaint and are referred to in it" at the motion to dismiss stage). In the email, Mr. Rottinghaus states that Mr. Mance "came into the store under the influence" and repeatedly cursed at Mr. Rottinghaus, causing Mr. Rottinghaus to call the police. (ECF 14-1).

The second document is a letter sent to the EEOC by Ms. Kern on behalf of AutoZone in response to Mr. Mance's EEOC complaint. Like Mr. Rottinghaus's email, Mr. Mance directly refers to this letter in his complaint. (*See* ECF 1 at 2 ("Auto Zoners LLC[] allowed their out of state attorney Tracy E. Kern to restate the same false narrative about Mr. Mance in writing knowing their intentions were to disvalue and ruin his reputation To *[sic]* the EEOC disvaluing his compliant *[sic]* to the EEOC.")). In this letter, Ms. Kern states that "on November 1, 2024, Mance showed up at the store intoxicated, threatening several employees such that an Order of Trespass was issued by local law enforcement against Mance. Based on his egregious behavior, his

3

employment was terminated." (ECF 14-2 at 2). According to Ms. Kern's letter, Mr. Mance's EEOC complaint contains allegations that another AutoZone employee, Leonisio Guzman, racially harassed Mr. Mance. (*Id.*)

## II.    ANALYSIS

Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6), arguing that Mr. Mance has failed to state a claim for defamation, hostile work environment, retaliation, or intentional infliction of emotional distress. The Court addresses each claim below.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554 (2007)); *accord McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2013) (a complaint "must contain 'allegations plausibly suggesting (not merely consistent with)' an entitlement to relief"). "[A] formulaic recitation of the elements of a cause of action," and "naked assertions" without supporting facts are inadequate. *Id.* (quoting *Twombly*, 550 U.S. at 557). A complaint therefore fails to state a claim if it does not "describe the claim in sufficient detail to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests [or] plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (internal quotations omitted).

### a. Defamation

Defendants first seek dismissal of Mr. Mance's defamation claim. In support, they argue that there are only three possible factual bases for this claim: the letter sent by Ms. Kern to the EEOC, the email sent by Mr. Rottinghaus to other AutoZone managers, and the "community knowledge" of Mr. Mance's termination. (ECF 15 at 5). Defendants contend that these are not enough to plausibly support a claim of defamation. The Court agrees.

Both parties accept that Indiana law applies to Mr. Mance's defamation claim. To establish a claim of defamation under Indiana law, "a plaintiff must establish (1) the existence of a communication with defamatory imputation, (2) malice, (3) publication, and (4) damages." *Neff v. Wal-Mart Stores East, LP*, 113 N.3.3d 666, 674 (Ind. Ct. App. 2018). Statements made during judicial or quasi-judicial proceedings are absolutely privileged and may not be the basis for a defamation claim. *See Abbott v. Individual Support Home Health Agency, Inc.*, 148 N.E.3d 1091, 1094 (Ind. Ct. App. 2020). EEOC proceedings, like proceedings before other regulatory agencies vested with court-like powers, are quasi-judicial. *See id.* at 1097; *see also Hartman v. Keri*, 883 N.E.2d 774, 777 (Ind. 2008) (basing the availability of absolute privilege on "the degree to which court-like procedures are available"). Similarly, "[i]ntracompany communications regarding the fitness of an employee are protected by . . . qualified privilege." *Bals v. Verduzco*, 600 N.E.2d 1353, 1356 (Ind. 1992). This qualified privilege is a defense to a defamation claim, but it may be overcome if the plaintiff shows that "(1) the communicator was primarily

5

motivated by ill will in making the statement; (2) there was excessive publication of the defamatory statements; or (3) the statement was made without belief or grounds for belief in its truth." *Id.*

Defendants first argue that Ms. Kern's letter is absolutely privileged and thus may not form the basis for a defamation claim. In support, they state that the letter is an EEOC position statement submitted by Ms. Kern on behalf of AutoZone in an EEOC proceeding. Mr. Mance does not argue otherwise. In fact, he acknowledges in his response that he "feels [Ms. Kern] is the only person who should be immune **if she did not act in malice** . . . ." (ECF 20 at 3 (emphasis in original)). As Mr. Mance does not allege that Ms. Kern acted maliciously in his complaint, the Court takes Mr. Mance to be acknowledging that the defamation claim against Ms. Kern may not continue. In any event, this letter is absolutely privileged and may not support a defamation claim against Ms. Kern or AutoZone.

Defendants next argue that Mr. Rottinghaus's email is qualifiedly privileged and thus may not form the basis for a defamation claim. In support, they assert that the email was sent for internal management purposes. They contend that Mr. Mance has not alleged that Mr. Rottinghaus was primarily motivated by ill will, or that there was excessive publication of the email, or that it was made without belief or grounds for belief in its truth.

Mr. Mance's complaint contains conclusory allegations that Mr. Rottinghaus sent the email "with the intentions of ruining Mr. Mances *[sic]* reputation with this gross and

6

discussing *[sic]* lie" because Mr. Mance "refused a bribe known as the Auto Zoners assistance fund." (ECF 1 at 2). But these allegations are fragmented and incoherent. Beyond this, the complaint does not include any additional details supporting the allegation that Mr. Rottinghaus was targeting Mr. Mance's reputation or explaining the attempted bribery Mr. Mance mentions in passing.

Mr. Mance does not attempt to contradict Defendants' arguments in his response. Instead, he states that "[e]mails that falsely accuse an employee of criminal activity, sexual misconduct or []meaning damages professional incompetence are considered defamatory *per se* (on their face),[ ]and can be assumed." (ECF 20 at 4). He also asserts that "[i]n order to receive []Qualified Privilege the []Defense: In Indiana, 'employers' shall prove communications are protected if they are made in **good faith** . . . ." (*Id.* (emphasis in original)). He cites no authority for either proposition. The gist of Mr. Mance's argument seems to be that there is no qualified privilege if an intracompany communication is made in bad faith. But, as noted above, Mr. Mance does not successfully allege bad faith, malice, disregard for the truth, or any other condition that might overcome the qualified privilege. Thus, this email cannot support a viable defamation claim.

Lastly, Defendants argue that community knowledge of Mr. Mance's termination may not form the basis of a defamation claim. As Defendants note, Mr. Mance "vaguely suggests that unidentified third parties learned that his employment with AutoZone ended." (ECF 15 at 7) But he does not come close to alleging that AutoZone or Ms. Kern

defamed him to these third parties, or even that Defendants caused these third parties to become aware of Mr. Mance's termination. This allegation offers no support for a defamation claim.

Mr. Mance grounds his defamation claim in two documents: Mr. Rottinghaus's email and Ms. Kern's letter. He also vaguely alludes to community knowledge of his termination. Neither document plausibly supports a defamation claim, and Mr. Mance does not allege facts beyond those documents sufficient to state a defamation claim.

### b. Hostile Work Environment

Defendants next seek dismissal of Mr. Mance's Title VII hostile work environment claim. In support, they argue that Mr. Mance has failed to allege facts supporting this claim. They also argue that Mr. Mance failed to exhaust his administrative remedies before bringing this claim. Mr. Mance does not contest either argument in his response.

To prove a hostile work environment violation of Title VII, "an employee must show: (1) the work environment was both subjectively and objectively offensive; (2) the harassment was based on membership in a protected class; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability." *Scaife v. United States Dep't of Veterans Affairs*, 49 F.4th 1109, 1115–16 (7th Cir. 2022). And before bringing any claim under Title VII, "a plaintiff must first exhaust his administrative remedies by filing charges with the EEOC and receiving a right to sue letter." *Anderson v. United Airlines, Inc.*, 140 F.4th 385, 390 (7th Cir. 2025).

8

The only allegation in Mr. Mance's complaint that relates to a hostile work environment claim is his conclusory assertion that "Mr. Mance was being bullied and harassed by the management staff at his job because of his race." (ECF 1 at 2). And Mr. Mance seems to acknowledge that he has not received a right to sue letter in his response, stating that "[t]he plaintiff does not need a right to sue during this trial." (ECF 20 at 1). Because Mr. Mance has failed to allege facts sufficient to support a hostile work environment claim and he has failed to exhaust his administrative remedies, he has not stated a hostile work environment claim against Defendants.

### c. Retaliation

Third, Defendants seek dismissal of Mr. Mance's Title VII retaliation claim. In support, they argue that he has failed to allege that he engaged in a protected activity that led to a retaliatory termination. They also repeat their argument that Mr. Mance failed to exhaust his administrative remedies. Mr. Mance does not address either argument in his response.

There are two main ways to make out a prima facie case of retaliation for a complaint of discrimination under Title VII. One of these is the direct method, which requires a plaintiff to allege that (1) he engaged in protected activity, (2) he suffered an adverse employment action, and (3) there was a causal connection between the two. *Boston v. United States Steel Corp.*, 816 F.3d 455, 464 (7th Cir. 2016). The other approach, the indirect method, requires a plaintiff to allege that (1) he engaged in a protected activity, (2) he met his employer's legitimate expectations, (3) he suffered an adverse

employment action, and (4) he was treated less favorably than similarly situated employees who did not engage in the protected activity. *Id.*

Mr. Mance does not allege facts sufficient to establish a prima facie case by either method. The only allegation that suggests protected activity is Mr. Mance's assertion that "[a]s of 03/28/25 Auto Zoners LLC has intentionally in malice made false statements against Mr. Mance, in retaliation to Mr. Mances *[sic]* inquiry to the EEOCs *[sic]* investigators." (ECF 1 at 1). Though Mr. Mance appears to vaguely allege that Defendants retaliated against him for his EEOC complaint, he does not allege that he filed his EEOC complaint before he was terminated. He cannot establish causation if he does not allege that protected activity occurred before the adverse employment action. Thus, he has not stated a claim by the direct method. And because he alleges no facts to suggest that he met his employer's legitimate expectations or that he was treated less favorably than similarly situated employees, he has also failed to state a claim by the indirect method.

### d.  Intentional Infliction of Emotional Distress

Last, Defendants seek dismissal of Mr. Mance's claim of intentional infliction of emotional distress. In support, they argue that Mr. Mance never comes close to alleging the type of extreme conduct necessary to support this tort. Mr. Mance offers no counterargument in his response.

Intentional infliction of emotional distress under Indiana law requires "extreme and outrageous conduct." *Cullison v. Medley*, 570 N.E.2d 27, 31 (Ind. 1991). There is

nothing in Mr. Mance's complaint that comes close to this standard. At most, he alleges that "Auto Zoners LLC made their assumptions appear to be a clear fact to the EEOCs *[sic]* investigators." (ECF 1 at 2). Even taking this allegation as true, this is hardly extreme and outrageous conduct. And based on his complaint, it seems that the primary source of Mr. Mance's emotional distress is the fact that he "has lost respect in the community." (*Id.*) On the facts alleged, it is not plausible that Defendants intentionally caused this injury. Thus, Mr. Mance has failed to state a claim for intentional infliction of emotional distress.

### e. Mr. Mance's Motions

Tacked on to the end of Mr. Mance's response to Defendants' motion to dismiss is a motion for a stay. (ECF 20 at 5). Mr. Mance does not provide any reasons why this motion should be granted. Nor does he define the scope of the stay he requests. Accordingly, this motion is denied.

Mr. Mance has also moved for default judgment. (ECF 19). In this motion, he appears to challenge the timeliness of Defendants' response to his complaint. Defendants were issued notice of this lawsuit on February 25, 2026. (ECF 7). In that notice, the Clerk informed Defendants that they were required to file and serve either a Rule 12 motion or an answer to Mr. Mance's complaint by April 26, 2026. (*Id.*) Because April 26, 2026, fell on a Sunday, Defendants had until April 27, 2026, to respond or move to dismiss Mr. Mance's complaint. Fed. R. Civ. P. 6. Defendants moved to dismiss Mr. Mance's complaint on April 27, 2026, and certified that they served him by mail on

11

that day. (ECF 14 at 3). Because Defendants timely moved to dismiss, Mr. Mance's motion for default judgment is denied.

## III.    CONCLUSION

For these reasons, Defendants' motion to dismiss, (ECF 14), is **GRANTED**. Mr. Mance's motions for stay, (ECF 20), and default judgment, (ECF 19), are **DENIED**. Mr. Mance's complaint is **DISMISSED WITHOUT PREJUDICE.** He may amend his complaint to state a plausible claim by June 9, 2026. Failure to comply with this deadline or state a plausible claim will result in dismissal of Mr. Mance's case without further notice. *See Hoskins v. Poelstra*, 320 F.3d 761, 763 (7th Cir. 2003).

SO ORDERED on May 19, 2026.

    /s/ *Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT